1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JOHN TOLE MOXLEY,

    *Petitioner*,

2:07-cv-01123-RLH-GWF

vs.

ORDER

DWIGHT NEVEN, *et al.*,

    *Respondents*.

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for consideration of the exhaustion issue briefed in the answer (#51) and reply (#52) as to Ground 2.   In an effort to expedite a final resolution of the case, the Court directed respondents to present any remaining procedural defenses in the answer together with their response on the merits. #50.

### Background

Petitioner John Tole Moxley seeks to set aside his 2004 Nevada state conviction, pursuant to a jury verdict, of possession of a stolen vehicle and his adjudication as a habitual criminal.

In Ground 2, petitioner alleges that he was denied a right to due process of law under the Fifth and Fourteenth Amendments when the State allegedly breached a promise to accept a plea to voluntary manslaughter in a murder case pending against him at the same time and a plea to possession of a stolen vehicle in the present case after petitioner detrimentally relied upon the promise by releasing his bail bond in the murder case.   Petitioner alleges in

1    particular: (a) that a deputy district attorney "promised Moxley that he could plead guilty to

2    voluntary manslaughter in case C-14152 (1-10 year sentence stipulation) and to the

3    possession of the stolen vehicle charges in case C-189183, where he faced a 1-5 year

4    sentence;" and (b) that "Moxley also believed that the deal included a provision that would

5    preclude the District Attorney from pursuing habitual criminal enhancement against him in the

6    PSV [possession of a stolen vehicle] case." He seeks "in this PSV case, specific performance

7    of the promises respecting the PSV plea, including the absence of any habitual criminal

8    charges . . ., resulting in vacation of Moxley's conviction and sentence."[1]

9        Petitioner presented a claim corresponding at least in part to federal Ground 2 in an

10    original mandamus petition filed in the state supreme court.  On a prior *sua sponte* show

11    cause inquiry, the Court held that the mandamus petition exhausted the claims presented

12    therein in the state courts pursuant to the Ninth Circuit's decision in *Chambers v. McDaniel*,

13    549 F.3d 1191 (9th Cir. 2008).[2]  The Court directed respondents to file an answer to the

14    remaining claims in the petition with the proviso that they include any additional procedural

15    defenses within the answer.[3]

16        In the answer, respondents contend that Ground 2 is not fully exhausted to the extent

17    that petitioner alleges that the proposed agreement included a plea to the stolen vehicle

18    charge with a 1 to 5 year sentence on that charge and with no possible habitual criminal

19    exposure.  Respondents contend that the mandamus petition filed in the Supreme Court of

20    Nevada alleged only that the State backed out of an agreement under which Moxley would

21    enter an *Alford* plea to voluntary manslaughter as to the murder charge with a stipulated 1 to

22    10 year sentence.

23        / / / /

24        / / / /

25    _____

26    [1]#33, at 11 & 13.

27    [2]#42, at 5-6.

28    [3]#50, at 1.

-2-

***Governing Law***

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust his state court remedies on a claim before presenting that claim to the federal courts.  To satisfy this requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada.  *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific federal constitutional guarantee and also must state the facts that entitle the petitioner to relief on the federal constitutional claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which his claim is based.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees.  *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

***Discussion***

Petitioner urges that law of the case bars respondents from raising this exhaustion issue because the Court previously considered exhaustion as to Ground 2 in its prior order. It is established law that the law of the case doctrine is "wholly inapposite to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction . . . [as] *[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment*."  *E.g., United States v. Smith*, 389 F.3d 944, 949 (9th Cir.2004)(quoting prior authority).  "[A]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for

1    cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d

2    882, 889 (9th Cir.2001)(quotations omitted).[4]

3         In the present case, the exhaustion issue previously was addressed on a *sua sponte*

4    inquiry initiated by the Court.  While the show cause order provided for briefing by

5    respondents, the Court's orders assuredly did not foreclose respondents from thereafter

6    raising any procedural defenses, including exhaustion.  Under the scheduling orders in this

7    case, the answer provided the first opportunity for respondents to independently raise and

8    pursue procedural defenses.  The only limitation interposed by the Court has been that any

9    procedural defenses raised at this juncture in the case be raised together with a response on

10   the merits.  Moreover, Congress has expressly declared that "[a] State shall not be deemed

11   to have waived the exhaustion requirement or be estopped from reliance upon the

12   requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C.

13   § 2254(b)(3).  The Court thus is not persuaded that it should reject respondents' exhaustion

14   argument out of hand on the basis that it previously has considered other exhaustion issues

15   as to Ground 2.

16        Petitioner next urges that the mandamus petition did in fact claim that the State also

17   agreed to a plea in the stolen vehicle case as part of the proposed plea deal upon which he

18   detrimentally relied.

19        This assertion is directly belied by the record.

20        As backdrop, the State filed a motion to revoke petitioner's in the murder case in

21   November 2002.  Petitioner maintains that at a Wednesday, March 12, 2003, hearing on the

22   State's motion he stipulated to the revocation of his bail and the release of the bond in

23   reliance upon a firm plea offer made by the State that date.  He maintains that the written plea

24   agreement that the State presented to him at the calendar call on the following Tuesday,

25

26   _____

27        [4]This is settled law requiring only minimal research to locate.  Counsel would do well to consider
     whether citation to an unpublished district court decision satisfies counsel's signing obligations under Rule 11
     when controlling Ninth Circuit precedent is directly contrary to the position argued.  It is highly doubtful that

28   reliance upon a doctrine that Ninth Circuit case law establishes is "wholly inapposite" complies with Rule 11.

                                            -4-

1  March 18, 2003, did not reflect the prior agreement, as to which the deputy district attorney

2  allegedly told Moxley that she had changed her mind.[5]

3      In the mandamus petition, Moxley alleged that on March 12, 2003, the proposed

4  agreement "was going to be a voluntary manslaughter/Alford decision" and that "the only

5  *question* was *whether or not* . . . to add the P.S.V. Case to the already agreement [sic]" in the

6  murder case.[6]  While he sought dismissal of both cases, he sought specific performance only

7  of the only firm agreement that he alleged had occurred, the alleged agreement as to "(1-10

8  voluntary manslaughter . . . under Alford . . . w/ time served credited) in Case C-141521."[7]

9  He did not seek specific performance as to the stolen vehicle case, as he had not alleged a

10  finalized agreement as to that case.

11      Similarly, the evidence that Moxley presented to the state courts clearly did not reflect

12  that any agreement had been reached on March 12, 2003, as to the stolen vehicle case.  The

13  November 25, 2003, affidavit of standby counsel, Paul Wommer, stated: (a) that on March

14  12, 2003, he suggested to the prosecution that any deal should include the stolen vehicle

15  case; and (b) that a deputy district attorney responded: "I'll think about that and get back to

16  you."[8]  At a July 31, 2003, evidentiary hearing, Wommer testified similarly that "Miss Goettsch

17  was hesitant about that . . . but said she would consider it."[9]

18      Petitioner thus neither alleged nor tendered evidence tending to establish that a deal

19  was reached on March 12, 2003, as to the stolen vehicle case before he stipulated to

20

21      [5]See #33, at 11-12; #37, Ex. 84 (partial transcript); #51, Ex. 2.

22      [6]#37, Ex. 75 at 16 (emphasis added); see also *id.*, at 15 ("Moxley's reasonable understanding of the
    plea agreement was: (1-10 year sentence of voluntary manslaughter . . . )"; *id.*, at 30 ("plea agreement of 1-
23  10 vol. manslaughter/Alford decision"); *id.*, at 47 ("the plea agreement . . . of "1-10 voluntary manslaughter . . .
    Alford with six days to think about it").

24      [7]#37, Ex. 75, at 53.

25
    [8]#37, Ex. 80, ¶ 7.
26

27      [9]#37, Ex. 61, at 65.  See also *id.*, at 67 (Moxley's question reflects that "the only question was
    whether or not they were going to throw in the possession of stolen vehicle case and that they would call
28  [Wommer] on it"); *id.*, at 77 (Moxley makes an unsworn statement to the court that "the only question is
    whether or not we're going to throw in the PSV").

1    revocation of bail and exoneration of the bond.  Petitioner never presented the state courts
2    with any claim in the mandamus petition that he released the bond on March 12, 2003, in
3    reliance on a State offer as to the stolen vehicle case.

4         Federal habeas counsel nonetheless seeks to establish that petitioner exhausted a
5    claim of detrimental reliance on an offer in the stolen vehicle case based upon the fact that
6    a proposed written plea agreement presented by the prosecution *on March 18, 2003*, would
7    have included an agreement as to the stolen vehicle case.[10]  This is the proposed written plea
8    agreement that Moxley alleges that he rejected because it provided for a plea to second
9    degree murder with a longer sentence rather than voluntary manslaughter.[11]  Obviously,
10   petitioner could not have relied on March 12, 2003, on a provision in a proposed written plea
11   agreement presented to him on March 18, 2003, that he claims was his first notice that the
12   alleged plea deal had fallen through.  Counsel's reference to the March 18, 2003, proposed
13   written plea agreement to establish exhaustion of a claim of detrimental reliance on March 12,
14   2003, on a firm plea offer in the stolen vehicle case is at best unpersuasive and at worst
15   disingenuous.

16        In the state supreme court, petitioner neither alleged nor presented evidence that a
17   plea deal had been reached in the stolen vehicle case when he stipulated to the exoneration
18   of his bail bond.  To now seek specific performance of a plea deal that he did not even allege
19   existed at the time of his alleged detrimental reliance fundamentally alters the claim presented
20   in state court.  Petitioner alleged in state court that a question remained on March 12, 2003,
21   as to whether to add the stolen vehicle case to the alleged agreement.  The exhaustion
22   doctrine does not permit him to now allege for the first time in federal court that he instead
23   had an enforceable promise to include the stolen vehicle case that he detrimentally relied
24   upon by stipulating to the exoneration of the bail bond.  Such a claim clearly was not fairly
25   presented to the state court.

26   _____

27        [10]#52, at 6-7.

28        [11]#37, Ex. 77.

1    Ground 2 therefore is not exhausted to the extent that: (a) petitioner claims that he

2    detrimentally relied upon a promise by the State that he could plead guilty in the stolen vehicle

3    case, (b) petitioner claims that he had a deal that precluded habitual criminal enhancement

4    in the stolen vehicle case; and (c) petitioner seeks specific performance of an alleged promise

5    or plea deal in the stolen vehicle case.

6    The entire action must be dismissed without prejudice unless these fundamental

7    alterations to the claim presented in state court are dismissed or petitioner seeks other

8    appropriate relief.

9    *Remaining Matters*

10    The state court record exhibits filed by petitioner's counsel are deficient in a number

11    of material respects.

12    First, what are presented as state court record exhibits in many instances in this case

13    in truth are copies of materials obtained from petitioner, not the state court clerk.  The

14    handwritten page numbers from the attachment of the materials to petitioner's state court

15    filings are evident on the exhibits filed by counsel.  An inmate seeking to overturn his

16    conviction is not a reliable source of state court record exhibits.  While the Court does not

17    require the filing of certified copies of state court record exhibits, counsel must file copies of

18    state court record materials that have been obtained directly from an official source.  It came

19    to the Court's attention that the materials filed were obtained from petitioner rather than the

20    state court clerk because it encountered material gaps in the papers that were filed.

21    Second, the exhibits are not organized in the index in any discernible consistent

22    fashion.  The Court understands that the issues in this case involve proceedings in both the

23    murder case and the stolen vehicle case.  However, the exhibits neither are filed consistently

24    in a chronological order nor consistently broken down by the individual case.  The only

25    conclusion that the Court can reach is that exhibits were added to the index as they were

26    received by counsel's staff.  There is no other readily apparent explanation for the haphazard

27    presentation of the exhibits in the index.

28    / / / /

1    The Court does not and cannot rely exclusively upon the answer and reply to direct the

2    Court's attention to the relevant portions of the exhibits.  For example, petitioner's counsel has

3    made factual assertions in this case without supporting record citation and/or without citation

4    to any relevant factual findings made by the state courts on the issue.   The Court

5    independently reviews the record.  To undertake such review, it must be able to use the index

6    of exhibits to follow the progress of an issue in the state court proceedings.  Chronological

7    organization of the exhibits usually is the best and easiest manner of organization.

8         Third, certain exhibits are incomplete, such as, for example, the transcript of the March

9    12, 2003, proceeding in which petitioner stipulated to the revocation of his bail and the

10   exoneration of the bond.

11        Counsel has a nondelegable duty to ensure that the state court record exhibits that he

12   files are both reliable and presented in a readily usable manner.  If counsel again files

13   purported state court record exhibits in a habeas matter in this Court that are obtained from

14   the interested petitioner rather than a state court clerk, that are presented in the haphazard

15   manner in this case, and that are missing key materials, the Court will direct counsel to refile

16   the full set of exhibits along with a certification that he has individually reviewed each exhibit

17   to assure compliance with the Court's directives.

18        In the present case, given the late juncture in these proceedings, the Court will direct

19   only that a limited number of key designated materials be filed or re-filed, either because they

20   are missing, incomplete and/or because they were not obtained from an official source.

21        IT THEREFORE IS ORDERED that the Court holds that Ground 2 is not exhausted

22   to the extent that: (a) petitioner claims that he detrimentally relied upon a promise by the State

23   that he could plead guilty in the stolen vehicle case, (b) petitioner claims that he had a deal

24   that precluded habitual criminal enhancement in the stolen vehicle case; and (c) petitioner

25   seeks specific performance of an alleged promise or plea deal in the stolen vehicle case.

26        IT FURTHER IS ORDERED that petitioner shall have **twenty-one (21) days** from entry

27   of this order within which to file a motion for dismissal without prejudice of the entire petition,

28   for partial dismissal only of the unexhausted claims, and/or for other appropriate relief.

1    IT FURTHER IS ORDERED that any motion filed must contain or be accompanied by,

2    either contemporaneously or via a document filed within **ten (10) days** thereafter, a signed

3    declaration by petitioner under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has

4    conferred with his counsel in this matter regarding his options, that he has read the motion,

5    and that he has authorized that the relief sought therein be requested from the Court.

6    IT FURTHER IS ORDERED that respondents shall have **fourteen (14) days** to file a

7    response to any such motion filed, running from the filing of the declaration, and petitioner

8    shall have **seven (7) calendar days** to file a reply, including any intermediate weekends or

9    holidays except for the last such day.

10    IT FURTHER IS ORDERED that, within **twenty-eight 28 days** of this order, petitioner

11    shall file supplemental exhibits with copies obtained from the respective state court clerk of

12    the following:

13    (a)    the State's November 22, 2002, motion for remand

14    and revocation of bail in No. C141521, *including all*

15    *of the attachments filed with the motion* (currently

16    Exhibit 79);

17    (b)    petitioner's written opposition to the motion;

18    (c)    the transcripts of hearings prior to March 12, 2003,

19    pertaining to the motion;

20    (c)    the *entire* transcript of the March 12, 2003, hearing

21    on the motion to revoke bail (currently Exhibit 84);

22    and

23    (d)    the *entire* August 26, 2004, original mandamus

24    petition filed in the state supreme court, *including*

25    *from page 56 on, the appendix and exhibits*

26    *reflecting the supporting factual record actually*

27    *presented by petitioner to the state supreme court*

28    (currently Exhibit 75).

1    Given the anticipated volume and nature of the exhibits, there is no need to send

2    a hard copy of the supplemental exhibits to the Court via the staff attorney.

3    Extension of the deadlines established herein will be considered in only the most

4    extraordinary of circumstances.

5         DATED:  June 27, 2011.

6

7

8    _____
     ROGER L. HUNT
9    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28